UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FREDY HERNANDEZ ESPINOSA,

        Petitioner,

v.                                    Case No.  2:26-cv-1258-JES-DNF

WARDEN, FLORIDA SIDE SOUTH
DETENTION FACILITY, et al.,

        Respondents.

_____/

## OPINION AND ORDER

Petitioner Fredy Hernandez Espinosa, an immigration detainee currently held at the Florida Soft Side South Detention Center (Alligator Alcatraz), initiated this action by filing a 28 U.S.C. § 2241 petition for writ of habeas corpus. (Doc. 1). Respondents filed a response and a supplemental response to the petition. (Doc. 5; Doc. 11). Hernandez Espinoza replied to the initial response. (Doc. 9). Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.    Background

Hernandez Espinosa is a national and citizen of Cuba. (Doc. 5 at 1). He was paroled into the United States on August 17, 2008 and became a legal permanent resident. (Id. at 2). After being charged with aggravated assault and domestic battery (adjudication withheld in both cases) and reckless driving, an immigration judge ordered Hernandez Espinosa removed to Cuba on September 18, 2018.

(Doc. 5-1 at 7).  He was released on an order of supervision on November 9, 2018.  (Doc. 11-1 at 1).

On November 10, 2025, Hernandez Espinosa's order of supervision was revoked, and he was taken into immigration custody. (Doc. 11-1 at 1).  The government offers the declaration of Deportation Officer Francisco Fondeur, Jr. who states that Hernandez Espinosa was scheduled for removal to Mexico on February 2, 2026 but refused to get dressed and get on the bus.  (Id. at 2).  Officer Fondeur also states that Mexico denied entry to Hernandez Espinosa at the Hidalgo Texas Port of Entry on March 9, 2026 due to his criminal history.  (Id.)  Thereafter, Hernandez Espinosa was returned to Alligator Alcatraz.  (Id.)  Officer Fondeur states that "ICE will continue to attempt removal at the other Mexico port of entries.  Additionally, ICE is looking into additional third country removal options for the petitioner." (Id.)

In his reply to the government's first response, Hernandez Espinosa remembers the situation differently and claims that he has not refused to cooperate with the government's removal efforts. (Doc. 9).  He asserts the following:

> The government alleges that . . . [Petitioner] failed to cooperate because he allegedly refused to change clothes in order to board the bus for removal.  This allegation is false and does not accurately describe what occurred.
>
> Petitioner did sign the deportation paperwork while detained in Texas.  After signing, Petitioner asked

2

officers why he was not being taken to the border. Officers informed him that every case was different and that if he had not yet been taken, it was because the case did not qualify at that time. Petitioner was then returned to the Alcatraz detention facility.

Approximately two weeks later, Petitioner was transferred again to the Port Isabel Detention Center. From there, officers transported him to the border at Hidalgo/Reynosa. Petitioner exited the bus and crossed the bridge into Mexico. However, once he was already on the Mexican side of the border, Mexican authorities refused to accept him and returned him back to United States custody. As a result, officers transported Petitioner back to detention.

About one week later, Petitioner was again transferred back to Alcatraz detention facility. Because neither Cuba nor Mexico accepted him, Petitioner decided to file the habeas petition now before this Court.

On May 4, officers conducted another interview with Petitioner concerning removal paperwork. During this interview, officers attempted to persuade Petitioner not to sign the documents, even though Petitioner had already previously signed similar paperwork in Texas and remained willing to cooperate with removal either Cuba or to Mexico.

Later that same day, officers returned and called Petitioner again. Petitioner asked whether it was normal to be interviewed twice in the same day regarding the same issue. At that point, officers provided him with a document falsely stating that he had refused to sign. This statement was untrue. Petitioner possesses both: (1) the document that he actually signed; and (2) The document prepared by officers falsely stating that he refused to sign.

(Doc. 9 at 1-2). Hernandez Espinosa claims to possess documents refuting Respondents' argument that he refused to cooperate with ICE and asserts that he has agreed to be removed to either Cuba or to Mexico, but neither country will accept him. (Id.)

3

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Hernandez Espinosa claims entitlement to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days.

4

Id.  If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise.  Id.[1]

Here, there is no dispute that Hernandez Espinosa has been in ICE custody for more than six months following his latest order of removal.  But Respondents contend that Hernandez Espinosa is not entitled to release because ICE attempted a third-country removal to Mexico, but by failing to get on a bus, he thwarted ICE's efforts at removal.

Title 8 U.S.C. § 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  And the Eleventh Circuit Court of Appeals recognizes that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-

_____

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months.  See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Hernandez Espinosa's actions implicated § 1231(a)(1)(C). Hernandez Espinosa denies the allegation that he refused to board a bus to Mexico. (Doc. 9 at 1). This Court need not resolve this factual discrepancy (nor will it address Hernandez Espinosa's disturbing allegation that immigration officers are encouraging detainees not to sign documents—presumably to create a case for non-cooperation) because it is clear that Mexico refused to accept Hernandez Espinosa due to his criminal history. Respondents do not allege that Mexico has changed its mind and actually agreed to accept Hernandez Espinosa or that ICE has an approved plan for removal to Mexico that he thwarted in some way.

In short, Respondents present no evidence showing that the government has taken any significant steps to remove Hernandez

6

Espinosa to any country.  Instead, their only effort at removal was a trip to the United States-Mexico border where Hernandez Espinosa agreed to go (and did go) to Mexico but was refused entry. The government still asserts that ICE will attempt to remove Hernandez Espinosa to Mexico through a different port of entry at an unspecified future date.  But Respondents provide no evidence suggesting that ICE has actually communicated with Mexico (or any other country) specifically regarding Hernandez Espinosa.  Nor has Respondent demonstrated that necessary travel documents have been sought—let alone obtained—for any country.  The Court also notes that it has been 125 days since ICE last attempted to remove Hernandez Espinosa to Mexico—far more than the 90 days contemplated by § 1231(a)(1)(A), and Respondents admit that no further actions have been taken in the interim.  Detaining a noncitizen and hoping that ICE will eventually be able to find a country willing to accept him a does not constitute a strategy likely to lead to imminent removal; rather, it is precisely the type of indefinite detention that Zadvydas sought to prevent.

Respondents have had almost eight years—and more than six months since his present detention—to remove Hernandez Espinosa and are still unable to articulate a specific plan for his removal to Cuba, Mexico, or any other country.  While there may be some possibility that Mexico will change its mind about accepting Hernandez Espinosa (notwithstanding his criminal history), "that

7

is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." <u>Arenado-Borges v. Bondi</u>, No. 2:25-cv-2193-JNW, 2025 WL 3687518, at *4 (emphasis added) (quotations omitted).

Based on the record before it, the Court finds that Respondents have failed to show a significant likelihood that Hernandez Espinosa will be removed in the reasonably foreseeable future. Therefore, he is entitled to release from detention under <u>Zadvydas</u>, but he remains subject to the terms of an order of supervision. If Hernandez Espinosa fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention. <u>See</u> 8 U.S.C. § 1253(b); <u>Zadvydas</u>, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely or imminent in the reasonably foreseeable future, ICE can re-detain Hernandez Espinosa to "assur[e] [his] presence at the moment of removal." <u>Zadvydas</u>, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.   Fredy Hernandez Espinosa's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.    Respondents shall release Hernandez Espinosa within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 10, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

9